**GLASS SERVICE COMPANY, INC., Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

**No. C1–94–2351.**

Court of Appeals of Minnesota.

May 2, 1995.

Review Denied June 29, 1995.

James W. Reuter, Charles J. Lloyd, Lindquist & Vennum, P.L.L.P., David R. Forro, Caldecott, Forro & Taber, Minneapolis, for appellant.

R.D. Blanchard, William M. Hart, Joseph W.E. Schmitt, Meagher & Geer, P.L.L.P., Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., AMUNDSON and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Judge.

Appellant Glass Service challenges the trial court's summary judgment on its claims that respondent State Farm tortiously interfered with its contracts and with its prospective business relations. Glass Service argues the court erroneously dismissed its tortious interference with contract claim because it presented sufficient evidence to find that contracts existed with its customers. Further, Glass Service asserts that its claim for tortious interference with prospective contractual relationships should not have been dismissed because State Farm's alleged violations of the Unfair Claims Practices Act defeats any justification defense. We affirm.

## FACTS

Appellant Glass Service Company is in the business of repairing and replacing automobile glass. Respondent State Farm is a mutual insurance company that offers automobile insurance coverage to the public. This case arises out of a dispute between Glass Service and State Farm over claims for windshield repair and replacement.

Prior to 1991, glass vendors in Minnesota, including Glass Service, obtained a majority of their business through insurance agent referrals. In 1991, State Farm implemented a single vendor program for automobile glass repair and replacements. Under the program, State Farm referred all its insureds to one vendor with which it had a contract.

Due to the large number of people insured by State Farm, other Minnesota glass vendors suffered under State Farm's single vendor program. A group of vendors complained to the legislature, claiming that the single vendor program took away people's freedom to choose a glass vendor and threatened to put many glass shops out of business. The legislature responded by amending the Unfair Claims Practices Act (UCPA) to make it an unfair claims practice for an insurer to fail to pay for all "reasonable costs" of the insureds' chosen vendor for glass replacement. Minn.Stat. § 72A.201, subd. 6(14) (1992). Insurers are also prohibited from coercing or inducing insureds to use a particular company, although insurers may recommend a vendor after first offering the insurer the opportunity to choose one. *Id.*, subd. 6(14), (16).

State Farm subsequently discontinued its single vendor program and instead developed a referral list of vendors. State Farm developed this list by surveying area vendors as to their prices for glass replacement. This list was used by State Farm agents to make referrals to insureds. Glass Service was not included on State Farm's referral list because its prices were higher than other vendors who were surveyed.

Under its automobile insurance policies, State Farm agrees to pay the "prevailing competitive price" for repairing or replacing broken glass. State Farm's policy defines "prevailing competitive price" as "prices charged by a substantial number of the repair facilities in the area * * * as determined by a survey."

State Farm deemed the prices offered by those on its referral list to represent the "prevailing competitive price" or the "reasonable cost" of glass replacement. Because Glass Service's prices were higher than those on the referral list, State Farm refused to

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

pay its invoices in full. When insureds would contact State Farm about using Glass Service, State Farm would inform them of the policy limitation and that they might be responsible for the price difference. Glass Service informed State Farm in May 1993 that it did not intend to hold customers responsible for the price difference but it continued to use invoices that required customers to agree to pay for work the insurance company was not required to pay.

In 1992, Glass Service sued State Farm, alleging that State Farm was tortiously interfering with Glass Service's contracts and prospective economic advantage by "twisting" customers away and directing them to other vendors (counts I and II). Glass Service also asserted other claims, including tortious interference with contracts by failing to pay in full invoices submitted by Glass Service (count III).

The trial court granted State Farm's motion for summary judgment on Glass Service's claims for tortious interference of contract and prospective contractual or business relations (counts I–III). The parties stipulated to dismissal without prejudice of Glass Service's remaining claims. Final judgment was entered on August 23, 1994, and Glass Service appealed.

## ISSUES

1. Did the trial court err in granting summary judgment against Glass Service on its claim that State Farm tortiously interfered with its contracts (count I)?

2. Did the trial court err in concluding that State Farm's actions were justified and that summary judgment was therefore appropriate on Glass Service's claim that State Farm tortiously interfered with its prospective business relationships (count II)?

3. Did the trial court err in granting summary judgment against Glass Service on its claim that State Farm tortiously interfered with its business relationships by failing to pay the full amount for work performed (count III)?

## ANALYSIS

A motion for summary judgment must be granted if there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). To survive summary judgment, a party must make a showing sufficient to establish the existence of all elements essential to that party's case. *Iacona v. Schrupp,* 521 N.W.2d 70, 72 (Minn.App.1994). On appeal from summary judgment, the reviewing court determines (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

1. Glass Service asserts that the trial court erred in granting summary judgment on its tortious interference with contract claim because the conduct and words spoken by Glass Service and its customers are evidence from which a jury could find a contract. *See Furlev Sales & Assoc., Inc. v. North Am. Automotive Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn.1982) (setting forth elements of claim for tortious interference with contract, including the existence of a contract). We disagree.

Glass Service contends that the requisites of offer and acceptance are met here because customers contacted Glass Service, requesting that Glass Service fix their windshields, and because Glass Service representatives would then take the necessary information to schedule the jobs, order parts, and prepare invoices. *See Cohen v. Cowles Media Co.,* 457 N.W.2d 199, 202 (Minn.1990) (contracts require offer, acceptance, and consideration). A promise is an offer, however, only if made with the intent to be legally bound. *Peters v. Mutual Benefit Life Ins. Co.,* 420 N.W.2d 908, 912–13 (Minn.App. 1988). An intent to be legally bound is determined objectively, by the outward manifestations of a party. *Id.* at 913.

Here, there is no evidence that either Glass Service or its customers, at the time of scheduling appointments, intended to be legally bound. Affidavits submitted by Glass Service indicated that it was Glass Service's

practice to verify insurance coverage before ordering any parts, doing any work, or preparing invoices. Glass Service offered no evidence that it had ordered parts or prepared invoices for any of the customers who cancelled their scheduled appointments. Further, none of the affidavits of customers indicate that they intended to be legally bound, as evidenced by a number of them contacting their insurance agent for approval and their subsequent choices to cancel the appointments. There is no evidence that price was ever discussed or mentioned.

We are not persuaded by Glass Service's reliance on cases involving hotel reservations to support its assertion that the customer's appointments constituted contracts. The agreement to be bound that might exist in the context of hotel reservations is not necessarily present in other contexts in which reservations or "appointments" are made. For example, we do not believe people intend to be legally bound when they make reservations at a restaurant, or schedule appointments to have their car repaired, their hair cut, or their teeth checked. Nor is it likely that the providers of such services perceive the customers to be bound or intend to be legally bound themselves by scheduling appointments. Accordingly, we find the hotel reservation cases inapplicable to this case and conclude that making an appointment did not constitute a contract because neither party manifested an intent to be legally bound. *See Peters,* 420 N.W.2d at 912–13 (promise is offer only if made with intent to be legally bound).

Because Glass Service failed to present evidence establishing the existence of contracts with its customers, the trial court did not err in granting summary judgment on its claim against State Farm for tortious interference of contract. *See Iacona,* 521 N.W.2d at 72 (must establish existence of all essential elements of case to survive summary judgment).

■ 2. Glass Service also argues that the district court erred in granting summary judgment on its claim for tortious interference with prospective business relations. To establish a claim for tortious interference with prospective business relations, "a plaintiff must prove the defendant intentionally committed a wrongful act which improperly interfered with the prospective relationship." *Hunt v. University of Minn.,* 465 N.W.2d 88, 95 (Minn.App.1991) (citing *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 633 (Minn. 1982)). Justification or privilege is a defense to a claim of tortious interference. *Nordling v. Northern States Power Co.,* 478 N.W.2d 498, 506 (Minn.1991).

We conclude that State Farm was justified in advising its insureds about policy limitations because of its contractual relationship. State Farm's insurance policies only obligate it to reimburse insureds for the "prevailing competitive price" for glass repair based upon "prices charged by a substantial number of repair facilities in the area * * * as determined by a survey." Because Glass Service's prices typically exceed what State Farm has determined by a survey to be the prevailing competitive price, State Farm is not obligated under the policy to pay the excess. State Farm was justified in informing insureds of this policy limitation and in suggesting alternative vendors whose charge would be fully covered under the policy. *See* Minn.Stat. § 72A.201, subd. 4(5) (making it an unfair claims practice to *fail* to notify an insured of all available benefits which the insured may be eligible to receive); *see also DeBonaventura v. Nationwide Mut. Ins. Co.,* 419 A.2d 942, 951 (Del.Ch.1980) (holding no improper interference with prospective business opportunity of repair shops by directing insureds to preferred shops or informing them they would otherwise have to pay difference).

Moreover, State Farm's representations to its insureds of potential liability for repair costs if Glass Service was used were not improper because they were not false. *See* Restatement (Second) of Torts § 772 cmt. b (1979) (no liability for interference on part of one who merely gives truthful information to another). State Farm's obligation to pay for glass repair and replacement under its policies was limited and Glass Service required customers to sign an invoice agreeing to pay for work the insurance company was not required to cover. Glass Service continued to require this commitment even after it

represented to State Farm that it did not intend to make customers pay any price difference. Based on the policy limitations and commitment required by Glass Service, it was possible that customers might be liable for some repair costs and thus, State Farm did not improperly interfere with Glass Service's prospective contractual relations by informing insureds of that potential liability. *See id.*

Glass Service argues that State Farm's justification defense is defeated because its actions of informing customers of potential liability for price differences constituted coercion and/or inducement in violation of the UCPA. *See* Minn.Stat. § 72A.201, subd. 6(16) (1992) (prohibiting coercion or inducement of insured to use particular vendor). We agree with the trial court, however, that the UCPA is inapplicable because it creates no substantive legal rights or private cause of action. *See Morris v. American Family Mut. Ins. Co.,* 386 N.W.2d 233, 238 (Minn.1986) (holding that no private causes of action exist for violations of the UCPA). Although Glass Service maintains that it is not asserting a claim for a violation of the UCPA, it is attempting to use an alleged violation of the act to establish an element of its common law claim—improper or unjustified interference. *See Hunt,* 465 N.W.2d at 95 (plaintiff must show improper interference with a prospective business relation to establish a claim).

Moreover, even if the statute was applicable, Glass Service failed to present any evidence to raise a genuine issue that State Farm coerced or induced its insureds to use a particular company. The evidence overwhelmingly indicates that, while insureds may have been informed that they might have to pay the difference between Glass Service's price and that of vendors on State Farm's referral list, they were aware it was ultimately their decision to make and if they were not, their decision was based on cost considerations rather than coercion or inducement.

Accordingly, the trial court properly granted summary judgment on Glass Service's claim for tortious interference of prospective business relations.

3. Finally, we conclude the trial court properly dismissed Glass Service's claim that State Farm tortiously interfered with its contracts by failing to pay the full amount for work performed (Count III). Glass Service contends that State Farm was required to pay its invoices in full because the UCPA requires an insurer to pay the "reasonable costs" associated with glass repair or replacement. *See* Minn.Stat. § 72A.201, subd. 6(14) (1992). Although Glass Service calls this claim one for tortious interference with contract, the claim is based on the UCPA's requirements and is essentially an attempt to recover damages for State Farm's alleged violation. As previously noted, the UCPA is an administrative remedy and provides no private cause of action. *Morris,* 386 N.W.2d at 238. Accordingly, Glass Service's claim to recover the unpaid portions of its invoices fails as a matter of law.

## DECISION

The trial court did not err in granting summary judgment against Glass Service on its claims that State Farm tortiously interfered with its contracts, tortiously interfered with its prospective business relations, and tortiously interfered with its business relations by failing to pay the full amount of invoices.

**Affirmed.**