*`This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1321**

Valley Paving, Inc.,
Appellant,

vs.

Stanley Consultants, Inc.,
Respondent.

**Filed May 9, 2016
Affirmed in part, reversed in part, and remanded
Jesson, Judge**

Hennepin County District Court
File No. 27-CV-13-16607

Justin P. Short, Kerry C. Raymond, Ashleigh M. Leitch, Best & Flanagan LLP,
Minneapolis, Minnesota (for appellant)

Anne W. Awsumb, Amy R. Baudler, Glenn E. Purdue, Purdue Awsumb & Baudler P.A.,
Minneapolis, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Jesson,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**JESSON**, Judge

Appellant Valley Paving, Inc., challenges the district court's summary-judgment

order dismissing its professional-negligence, breach-of-warranty, and breach-of-contract

claims. Because we conclude that the district court properly granted summary judgment

on Valley Paving's professional-negligence and breach-of-warranty claims, but erred by dismissing Valley Paving's breach-of-contract claim, we affirm in part, reverse in part, and remand. We also conclude that the district court erred by granting the motion of respondent Stanley Consultants, Inc., for summary judgment on its counterclaim.

## FACTS

In November 2011, the Minnesota Department of Transportation (MnDOT) issued a request for bids on a highway-improvement project. The project was a design-build using a guaranteed-maximum-price contract. This meant that MnDOT and a general contractor would agree to a contract price based on the amount of the contractor's bid, and that even if the ultimate cost of performing the contract substantially exceeded the contract price, the contractor would not be entitled to additional payment from MnDOT.

Valley Paving was interested in submitting a bid for the project. Stanley, an engineering firm, helped Valley Paving develop its bid by calculating the quantities of work necessary to complete the project. Stanley provided estimates for paving, milling, excavation, grading, fill, pipe-and-culvert work, pavement markings, and traffic signage. Stanley used information provided by MnDOT in preparing these estimates and gave them to Valley Paving. Shortly before the bid was due, Stanley's lead engineer on the project informed Valley Paving that he was 95% sure that Stanley's work-quantity estimates were accurate. Valley Paving then used these work-quantity estimates to formulate its bid and submitted the bid to MnDOT. Stanley had no contract with Valley Paving at this point and was not compensated for its work during the bid phase of the project.

Valley Paving submitted the lowest bid and was awarded the contract in late January 2012. Valley Paving's bid of $10,234,000 was $11,705 lower than the next lowest bid. Valley Paving agreed to a contract with MnDOT. Shortly after Valley Paving and MnDOT entered into a contract, Valley Paving subcontracted with Stanley to provide final design engineering services on the project. The contract contained a warranty provision requiring Stanley to "conform to current professional engineering principles generally accepted as standards of the industry." The contract also included two notice provisions that Valley Paving claims required Stanley to inform it of any errors in the MnDOT information or other contract documents and of any event that might allow Valley Paving to seek a price increase on its contract with MnDOT. One of these provisions required Stanley to "notify" Valley Paving "[i]n the event of any conflict between or ambiguities in any documents which are part of this Agreement." The other required Stanley to give Valley Paving written notice of "the happening of any event which [Stanley] believes may give rise to a claim by [Stanley] for an increase in the Contract Price or in the scheduled time for performance, and for which [Valley Paving] may make a corresponding claim against [MnDOT] under the Prime Agreement."

In June 2012, New Look Contracting, Inc., with which Valley Paving had subcontracted for excavating services, notified Valley Paving that its work quantities were far above what Stanley had originally estimated. This resulted in Valley Paving paying New Look significantly more for New Look's work on the project than Valley Paving should have, considering Stanley's initial estimates (cost overruns). There were also cost overruns in other areas of the project. Valley Paving asked Stanley for an

3

explanation and ceased paying Stanley, pending a resolution of the issues. The project was substantially complete and opened to vehicle traffic in August of 2012. In September of 2012, Stanley submitted a memo to Valley Paving, explaining that the cost overruns were the result of errors in its work-quantity estimates, caused in part by reliance on information provided by MnDOT.

Valley Paving estimates the total amount of cost-overruns at $911,950. It claims that $233,000 of these cost overruns are solely the result of Stanley's errors and that the remaining amount is the result of Stanley's reliance on erroneous MnDOT information. Despite the cost overruns, Valley Paving admits that it made a profit on the project. Valley Paving's vice president indicated in a deposition that, although he was unsure of the exact amount, Valley Paving may have made somewhere between $100,000 and $500,000 in profit on the project.

Valley Paving filed this suit against Stanley. Valley Paving claimed that Stanley committed professional negligence during the bid phase of the contract, which resulted in the cost overruns. Valley Paving also claimed that, after it entered into the contract with Stanley, Stanley was negligent and breached the warranty-and-notice provisions of the contract by failing to notify Valley Paving of the cost overruns in a timely manner. Stanley counterclaimed for the remaining $305,007 owed under the contract. The district court granted Stanley's motion for summary judgment, dismissing Valley Paving's claims and entering judgment in favor of Stanley on its counterclaim. This appeal follows.

4

## DECISION

## I.

Valley Paving challenges the district court's grant of summary judgment to Stanley on Valley Paving's claims of professional negligence, breach of warranty, and breach of contract. The district court dismissed these claims because it determined that Valley Paving failed to produce evidence creating a genuine issue of material fact as to whether Stanley's negligence and breaches of contract caused Valley Paving damages.

The district court addressed three damage scenarios under which Valley Paving claimed it would have made a greater profit if not for Stanley's negligence, breach of warranty, and breach of contract. First, Valley Paving argued that, if Stanley had accurately calculated the work quantities or had informed Valley Paving of MnDOT's inaccurate work quantities during the bid phase of the project, Valley Paving could have revised or withdrawn its bid. Valley Paving claimed that by submitting a higher bid to MnDOT, it could have made a much higher profit on the project, and alternatively, had it been able to withdraw its bid, it could have made a higher profit on a different project. Second, Valley Paving claimed that, had Stanley informed it of the cost-overrun issues earlier in the post-bid phase of the project, Valley Paving could have made a claim against MnDOT for an increase in the contract price. Finally, Valley Paving asserted that if Stanley had informed it of the cost overruns in a timely fashion during the post-bid phase of the project, Valley Paving could have made a greater profit on the project by renegotiating with subcontractors and managing the project more efficiently.

Valley Paving's quantification of damages for these different scenarios is straightforward: an itemization of the cost overruns resulting from erroneous work-quantity estimates. Even if the district court did not accept this approach, Valley Paving argues that it proved that it sustained some level of damages.

On appeal from summary judgment, this court reviews de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing*, *LLC*, 829 N.W.2d 53, 56 (Minn. 2013). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002). A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

In its decision, the district court reasoned that each of the three damage scenarios failed to show that, "but for" the erroneous quantity estimates and Stanley's failure to notify Valley Paving of the cost overruns, Valley Paving's outcome would have been better. The district court noted that because Valley Paving did not lose money on the contract it "cannot rely solely on the quantity overruns . . . to demonstrate that Stanley caused it to suffer damages." The district court also addressed the challenge of seeking nearly one million dollars in cost-overrun damages for a contract Valley Paving might not have been awarded, had the correct work-quantity estimates been used. After carefully examining each alternative damage scenario, the district court determined that

Valley Paving failed to present specific evidence of a benefit that its actions would have produced "but for" the wrong quantity estimates and Stanley's failure to notify.

We agree with the district court that Valley Paving failed to introduce evidence necessary to establish damages for its professional-negligence claim, which requires concrete evidence of both (1) what the plaintiff would have done but for the negligence and (2) what those actions reasonably would have produced. *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 812-13 (Minn. App. 2007), *review denied* (Minn. Sept. 18, 2007). But this case also involves a breach-of-contract claim, which in this case is driven by expectation damages. *Logan v. Nw. Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn. App. 1999); Restatement (Second) of Contracts § 344(a) (1981). Expectation damages attempt to place the non-breaching party in the position it would have been in had the contract been fully performed. *Peters v. Mut. Benefit Life Ins. Co.*, 420 N.W.2d 908, 915 (Minn. App. 1988).

This case leads us to examine the historical distinction between contract and tort law. After doing so, we conclude that the district court appropriately granted summary judgment on the professional-negligence-related claims but applied the wrong legal standard to Valley Paving's remaining breach-of-contract claim.[1] Accordingly, we affirm

---

[1] At oral argument and in its reply brief, Valley Paving also argued that the indemnification clause in the parties' contract entitles it to damages. Valley Paving did not defend against Stanley's summary-judgment motion on this basis in district court, and the district court did not address this issue. Other than as a defense to Stanley's counterclaim, Valley Paving also did not raise indemnification in its principal brief. This court does not address issues not argued to and considered by the district court or matters not raised in an appellant's principal brief. *Fontaine v. Steen*, 759 N.W.2d 672, 679 (Minn. App. 2009). We therefore do not address the indemnification issue. We note,

7

summary judgment on the professional-negligence-related claims and reverse and remand the breach-of-contract claim.

### Professional-Negligence Related Claims

We first address Valley Paving's professional-negligence claim. Stanley's work-quantity estimates—the basis for the professional-negligence claim—were provided to Valley Paving before the parties entered into a contract. But even where there is no contract, the common law imposes an obligation on engineers to perform their services with reasonable care and competence and makes them liable for damages caused by a failure to do so. *Gammel v. Ernst & Ernst*, 245 Minn. 249, 253-54, 72 N.W.2d 364, 367 (1955). As the Minnesota Supreme Court has held regarding design engineers: "One who undertakes to render professional services is under a duty to the person for whom the service is to be performed to exercise such care, skill, and diligence as [persons] in that profession ordinarily exercise under like circumstances." *City of Eveleth v. Ruble*, 302 Minn. 249, 253, 225 N.W.2d 521, 524 (1974). The supreme court has explained:

> Architects, doctors, engineers, attorneys and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement. The indeterminate nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance. . . . Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results,

however, that indemnity is generally only available when the plaintiff has incurred a legal obligation to pay damages to a third party as a result of the defendant's breach of contract or negligence. *Keefer v. Al Johnson Constr. Co.*, 292 Minn. 91, 98-99, 193 N.W.2d 305, 310 (1971). Valley Paving does not allege that a legal claim has been asserted against it by a third-party as a result of Stanley's negligence or breach of contract.

8

> but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals.

*City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 424 (Minn. 1978).

The imposition of this duty on engineers, like other professionals, through the common law is the result of the evolution of tort law. Originally, tort law of negligence focused on securing compensation for losses due to physical injury or injury to property. Dan B. Dobbs, *The Law of Torts* § 111 (2000). As time progressed, tort law began to recognize emotional and psychological injuries, in addition to economic damages due to professional negligence. *See Purcell v. St. Paul City Ry. Co.*, 48 Minn. 134, 50 N.W. 1034 (1892) (recognizing claim for negligent infliction of emotional distress); *Waldor Pump & Equip. Co. v. Orr-Schelen-Mayeron & Assocs., Inc.*, 386 N.W.2d 375, 377 (Minn. App. 1986) (holding professional engineers liable in negligence for economic losses to those foreseeably relying on their services). But while tort law expanded to damages beyond personal injury, it has also generally required proof that those damages would not have occurred "but for" the defendant's negligence. *See* Dobbs, *supra*, § 168 (discussing application of "but for" test to "the great mass of [negligence] cases"). This but-for analysis has developed strict requirements in the legal-malpractice realm, where plaintiffs are required to prove both that their attorney was negligent and that but for that negligence they would have prevailed in a prior claim. *Id.*, § 486. Varying applications of this stringent but-for analysis have also been applied in non-attorney malpractice cases. *See*, *e.g.*, *Christians*, 733 N.W.2d at 808, 812-13 (applying but-for causation test in auditor-malpractice case.)

9

We conclude that the Minnesota Supreme Court's framing of the "but for" test in transactional legal malpractice matters best fits the case before us. Under that test, to sustain its action for professional negligence Valley Paving must prove four elements: (1) the existence of a duty; (2) breach of that duty; (3) that Stanley's negligence was the proximate cause of Valley Paving's damages; and (4) that, but for Stanley's negligence, Valley Paving would have obtained a more favorable result. *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816, 819 (Minn. 2006). We ask, regarding the fourth element of the claim for professional negligence (but-for causation), whether Valley Paving has shown that, but for Stanley's conduct, it would have made more money on the transaction than the result obtained. *Id.* at 819. To do so, Valley Paving needed to provide concrete evidence of a hypothetical alternative to answer the question—what would have happened if Stanley had not been negligent? *See Christians*, 733 N.W.2d at 813 (requiring specific evidence of hypothetical alternative); *see generally* Dobbs, *supra*, § 169 (discussing the role of the "hypothetical alternative" in the but-for causation analysis).

We examine each of Valley Paving's damage scenarios in turn. While some of the scenarios painted by Valley Paving might provide the "hypothetical alternative" required by the "but for" causation requirement, Minnesota law requires more than a hypothetical. It requires some facts to demonstrate that the plaintiff would have made more money in the hypothetical situation. *Christians*, 733 N.W.2d at 813.

Valley Paving first argues that, if Stanley had properly calculated the work quantities, its contract bid would have been much higher and it, therefore, would have

10

earned a much greater profit on the project. As the district court explained, however, because the second lowest bid was only $11,705 higher than Valley Paving's bid, Valley Paving would not have submitted the lowest bid if not for Stanley's negligence. Valley Paving claimed at oral argument that it could have won the project without submitting the lowest bid. This, however, is mere speculation. Damages that are remote and speculative are not recoverable. *Jackson v. Reiling*, 311 Minn. 562, 563, 249 N.W.2d 896, 897 (1977). There is no evidence in the record indicating that Valley Paving would have been awarded the project if its bid had been over $900,000 higher. In addition, there was no evidence submitted to the district court that Valley Paving could have earned a greater profit on a different project if it had not won the bid or decided, after receiving accurate estimates from Stanley, not to submit the bid.

Minnesota caselaw provides numerous examples of failure to meet the "but for" causation standard in similar professional-negligence cases. In *Blue Water Corp. v. O'Toole*, the plaintiffs alleged professional negligence against an attorney for failing to timely file an application for a bank charter. 336 N.W.2d 279, 282 (Minn. 1983). After a jury verdict for the plaintiffs, the supreme court reversed and remanded with instructions to grant judgment for the attorney because the plaintiffs failed to show that the application would have been accepted had the attorney filed it on time. *Id.* Just as there was no evidence in *Blue Water* that the application would have been granted if not for the attorney's negligence, there is no evidence in this case that Valley Paving would have received the project if not for Stanley's erroneous quantity estimates.

11

In *Christians*, a bankruptcy trustee for a corporate debtor brought an auditor-malpractice claim, alleging that an accounting firm's audit showed that the corporation was solvent, when in fact it was not. 733 N.W.2d at 807. The trustee claimed that if the corporation had known it was insolvent earlier, it could have filed for bankruptcy and conducted a successful Chapter 11 reorganization. *Id.* at 812-13. We affirmed summary judgment for the auditing firm because the trustee failed to present any "concrete evidence" that the corporation actually would have come out of bankruptcy in a better position had the audit informed it of its insolvency. *Id.* at 813. Similarly, Valley Paving failed to produce any concrete evidence that it would have received the project had its bid reflected the proper work quantities.

Like the plaintiffs in *Blue Water* and *Christians*, Valley Paving failed to submit any concrete evidence showing how Stanley's negligence in the bid phase of the project caused it damages.

Valley Paving argues that in the post-bid phase of the project, Stanley also was negligent in its failure to provide earlier notice of the cost overruns. Valley Paving claims that with proper notice it could have earned greater profits by making a claim against MnDOT for an increase in the contract price, or renegotiated its agreements with subcontractors and managed the project more efficiently. These damage scenarios suffer from the same deficit as the claim above: they assume that Valley Paving would have received the contract with MnDOT. Because of the lack of concrete evidence to support this hypothetical, summary judgment was appropriate.

12

Finally, Valley Paving attempts to shoehorn its professional-negligence claims into the subsequent contract through the warranty provision contained in the contract with Stanley, signed after Valley Paving received the MnDOT contract. The provisions of the contract that refer to warranty and quality of services, however, simply hold Stanley to the same standard of care applied by the common law in professional-negligence cases. *See Gammel*, 245 Minn. at 253-54, 72 N.W.2d at 367 (stating this standard of care). The contract explicitly states that the warranty "shall not be construed to elevate [Stanley's] standard of care. . . concerning the quality of [Stanley's] services." This court has previously held that the but-for causation element in professional-negligence claims applies equally to malpractice claims that arise out of contract. *Christians*, 733 N.W.2d at 808. Because we conclude that Valley Paving's breach-of-warranty claim is essentially a malpractice claim, it fails to meet the but-for causation element as discussed above.

Valley Paving failed to introduce the concrete evidence necessary to allow jurors to reach a nonspeculative conclusion as to how it would have earned a larger profit on the project, but for Stanley's negligence. Because there are no genuine issues of material fact as to causation of damages, we conclude that the district court properly granted summary judgment and dismissed Stanley's professional-negligence and related breach-of-warranty claims.

### Breach-of-Contract Claim

Unlike Valley Paving's professional-negligence related claims, the breach-of-contract claim does not require Valley Paving to meet the professional-negligence

13

causation standard, which calls into question whether Valley Paving would have received the MnDOT contract "but for" the low work-quantity estimates. The starting place for a breach-of-contract claim is straightforward: is there a contract? *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. App. 2008), *review denied* (Minn. Jan. 20, 2009). Here, a contract is in place. The next two questions are whether that contract was breached by Stanley and, if so, whether damages resulted from Stanley's breach. *Border State Bank v. Bagley Livestock Exch., Inc.*, 690 N.W.2d 326, 336 (Minn. App. 2004), *review denied* (Minn. Feb. 23, 2005).

Contract actions protect a different interest from tort claims—they "protect the interest in having promises performed." *D & A Dev. Co. v. Butler*, 357 N.W.2d 156, 158 (Minn. App. 1984). The determination of what damages (if any) result from a contract breach reflects this distinction. The role of contract damages is to place the aggrieved party in the position it would have been in if the contract had been performed, *Peters*, 420 N.W.2d at 915, or to compensate a party for losses resulting from a change in position due to reliance on the contract. *Ngyuyen v. Control Data Corp.*, 401 N.W.2d 101, 105-06 (Minn. App. 1987). Valley Paving seeks the former, which are referred to as "expectation damages." These damages are intended to reflect the expectations of the parties as set out in the contract. *Starlite Ltd. P'ship v. Landry's Rest. Inc.*, 780 N.W.2d 396, 398 (Minn. App. 2010). Significantly in this case, the contract-damage standard is different from, and less stringent than, the "but for" standard required in professional-negligence claims.

14

Here, Valley Paving claimed that Stanley breached the parties' contract by failing to notify it of the cost overruns in a timely manner. The parties' contract required Stanley to inform Valley Paving "[i]n the event of any conflict between or ambiguities in any documents which [were] part of" the parties' agreement and to inform Valley Paving of any "event" that might have allowed Valley Paving to seek an increase on its contract with MnDOT. The damages attributed to breach of these provisions fall into two scenarios. First, Valley Paving's vice president stated in his deposition that, based on his experience with MnDOT and his company's ongoing relationship with MnDOT, if Valley Paving had been promptly informed of the issues resulting in the cost overruns, Valley Paving would have been in a position to seek a price adjustment from MnDOT.[2] Second, Valley Paving claims that had it known about the cost overruns earlier, it could have notified subcontractors and asked them to revisit their bids or found more efficient ways to manage the project. If it had been able to undertake one of these actions (with appropriate notice from Stanley), Valley Paving argues that it would have been able to recoup some or all of the cost overruns that it claims as damages.

Given the multi-faceted world of construction contracting, these damage claims may have survived summary judgment, had the appropriate legal standard (expectation damages) been applied. The contract between MnDOT and Valley Paving indicates that Valley Paving would not have been entitled to an increase on the contract based on cost overruns. This could be seen as limiting the expectations of Valley Paving and Stanley

---

[2] We note that because Valley Paving and Stanley had no contract in the pre-bid phase of the project, Valley Paving's breach-of-contract claims relate only to post-bid activities.

by foreclosing the possibility of an increase on the MnDOT/Valley Paving contract. On the other hand, the contract between Valley Paving and Stanley (which was drafted by Stanley) specifically provides for written notice of an event that may give rise to a claim against MnDOT under the MnDOT/Valley Paving contract. This provision could be viewed as defining the expectations of Valley Paving and Stanley that a claim against MnDOT for increased payments was possible. This interpretation of the parties' expectations appears reasonable in light of the deposition of Valley Paving's vice president stating that, if brought in a timely fashion, such a claim would indeed have been possible.

Nor is the scenario unreasonable that, with notice, Valley Paving may have been able to find efficiencies in a ten-million-dollar contract in order to cover some of the cost overruns. This was a project under their control. The allegation that some of the eight subcontractors, which may have or desire long-term relationships with Valley Paving, would work with the company to make reductions is not unreasonable in the construction industry. Commentators have observed that the construction industry "involves the efforts of contractors, professionals, analysts, artisans, and laborers" often engaged in "extended long-term relationships." Thomas J. Stipanowich, *Reconstructing Construction Law: Reality and Reform in a Transactional System*, 1998 Wis. L. Rev. 463, 465 (1998).

Valley Paving provided a precise calculation of the total amount of cost overruns. Although the exact extent to which Valley Paving may have been able to recoup some of these funds through renegotiations or other efficiencies is unclear, Valley Paving is not

16

required to prove the amount of damages to a certainty. *See Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977) (stating this principle). Valley Paving need only provide proof of a reasonable basis upon which damages can be estimated. *Id.* And the amount of damages is generally a question of fact for the jury. *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 789 (Minn. 1989).

The district court dismissed Valley Paving's breach-of-contract claim because it determined that Valley Paving could not prove that Stanley's alleged breach caused it damages. The district court also found that Valley Paving failed to provide a reasonable basis upon which to estimate the amount of damages. In assessing Valley Paving's breach-of-contract claim, the district court applied the but-for element of causation of damages. The district court compared Valley Paving's damages to the damages alleged in two professional-negligence cases, *Christians*, 733 N.W.2d at 803, and *Schmitz v. Rinke, Noonan, Smoley, Deter, Colombo, Wiant, Von Korff & Hobbs, Ltd.*, 783 N.W.2d 733, 741 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010). The district court also cited these cases as providing the essential elements of Valley Paving's breach-of-contract claim. But, as stated above, the strict but-for causation element applied in these cases is only relevant to Stanley's professional-negligence related claims.

When the district court applies an incorrect legal standard to a party's claim, we may remand for application of the proper standard. *Gradjelick v. Hance*, 646 N.W.2d 225, 235 (Minn. 2002). Accordingly, we reverse the district court's dismissal of Valley Paving's breach-of-contract claim and remand the matter for reconsideration in light of the principles we have described and without regard to the but-for causation element.

We also note that the district court did not consider whether Valley Paving submitted sufficient evidence of breach to survive summary judgment on its contract claim. The district court also did not rule on the admissibility of the testimony of Valley Paving's expert witness. On appeal, we do not consider matters not addressed by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). To the extent that they remain applicable, the district court shall address these issues on remand.

## II.

Finally, Valley Paving argues that the district court erred by granting Stanley's motion for summary judgment on its counterclaim for the remainder of money owed under the contract. We agree. A material breach of contract allows a party to withhold payment on the contract. *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728 (Minn. App. 2011), *review dismissed* (Minn. Aug. 12, 2011). Also, a prevailing party may offset the amount it owes on a contract from its damages. *Solidification, Inc. v. Minter*, 305 N.W.2d 871, 873 (Minn. 1981). Because we reverse the district court's grant of summary judgment to Stanley on Valley Paving's breach-of-contract claim, summary judgment is premature on Stanley's counterclaim.

**Affirmed in part, reversed in part, and remanded.**