HOUGH TRANSIT, LTD.,
et al., Appellants,

v.

NATIONAL FARMERS
ORGANIZATION,
Respondent,

Mark Wilke, Defendant.

No. C1–90–2700.

Court of Appeals of Minnesota.

June 25, 1991.

Paul A. Sortland, Messerli & Kramer, Minneapolis, for appellants.

Stephen F. Rufer, Hefte, Pemberton, Sorlie & Rufer, Fergus Falls, for respondent.

Considered and decided by KALITOWSKI, P.J., and SHORT and DAVIES, JJ.

## OPINION

SHORT, Judge.

On appeal from a grant of summary judgment, Hough Transit, Ltd. argues the trial court erred as a matter of law in concluding (1) the exclusive dealing agreement between National Farmers Organization and Wilke did not violate state antitrust law and (2) its claim for tortious interference with a prospective business advantage was meritless. We disagree and affirm.

## FACTS

Hough Transit, Ltd. is a trucking service which is in the business of hauling milk from farmer-producers to various creameries. Respondent National Farmers Organization is a cooperative consisting of farmer-producers. In 1973, the co-op agreed to use Hough to transport its members' milk to the creamery. Hough and the co-op have not had a written contract since 1973.

Defendant Mark Wilke (driver) worked as a driver for Hough on and off for the past 10–12 years. The driver and Hough have had no written employment contract since 1985. Instead, Hough would contact the driver on an as-needed basis. If the driver was available, he would agree to drive. Neither the earlier written contract nor the oral agreement between the driver and Hough prevented the driver from competing with Hough or restricted his contacts with potential customers.

During 1988, the co-op became dissatisfied with Hough's performance. The co-op claimed Hough's drivers were not picking up milk on time, were favoring the routes of larger dairies over co-op producers, and were not collecting milk samples or doing paperwork. In the fall of 1988, several of the co-op's producers approached the driver and asked him to start a milk hauling business. The driver agreed and began to look for milk hauling equipment. In late January of 1989, Hough went to the co-op to ask whether the co-op was replacing Hough's trucking services. The co-op told Hough about its conversation with the driver regarding the co-op's routes and Hough quit working for the co-op. The driver immediately took over the co-op's milk routes.

Under the new hauling arrangement, the driver charges farmers a higher price for milk pick up than did Hough. The driver hauls exclusively for co-op producers, and several of Hough's customers switched to the driver's hauling business. Hough lost approximately $5,000 net income per month as a result of losing the co-op routes. In addition, Hough claims he could have sold those routes to another hauler for $50,000. However, Hough agrees that another hauler could take over a milk route without paying the previous hauler if the producers were unsatisfied with the first hauler's service.

In 1989, the driver sued Hough in small claims court for unpaid wages. Hough then filed a counterclaim against the co-op and the driver alleging two counts of tor-

tious interference with prospective business relations and a violation of state antitrust law. The case was removed to district court. The co-op filed a motion for summary judgment, which was initially denied by the trial court. After five months of discovery, the co-op renewed its motion and the trial court granted summary judgment for the co-op.

## ISSUES

I. Does the relationship between the co-op and the driver constitute a violation of antitrust laws?

II. Did the trial court err in dismissing Hough's claims for tortious interference with a prospective business advantage?

## ANALYSIS

On appeal from a grant of summary judgment, we determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hosps. and Clinics*, 426 N.W.2d 425, 427 (Minn.1988). We view the evidence in the light most favorable to the nonmoving party, but need not defer to the trial court's application of the law. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Davis v. Midwest Discount Sec., Inc.*, 439 N.W.2d 383, 386 (Minn.App.1989).

## I.

■ The Minnesota Antitrust Law of 1971 provides "[a] contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful." Minn.Stat. § 325D.51 (1988). This section codifies the "rule of reason" used to evaluate the legality of trade restraints under federal law. *See* Note, *Minnesota Antitrust Law of 1971: Interpretation and Analysis*, 63 Minn.

L.Rev. 907, 926–27 (1979) (hereinafter Note); *see also Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49, 51 & n. 18, 59, 97 S.Ct. 2549, 2557, 2558 & n. 18, 2562, 53 L.Ed.2d 568 (1977) (rule of reason applies to certain vertical non-price restraints). In applying the rule of reason, the court "must examine the purpose, the market power and the anticompetitive effect of the restraint, and thus arrive at a conclusion as to the reasonableness of the restraint." *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1267 (8th Cir.1980) (citing *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918)), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980). The court must focus on the restraint's effect on competition, not its effect on an individual competitor. *See National Soc'y of Professional Eng'rs v. United States*, 435 U.S. 679, 690–91, 98 S.Ct. 1355, 1364–65, 55 L.Ed.2d 637 (1978).

■ Whether a restraint is unreasonable is a question of fact. *Minnesota–Iowa Television Co. v. Watonwan T.V. Improvement Ass'n*, 294 N.W.2d 297, 307 (Minn.1980). Some combinations so detrimentally affect competition they are conclusively presumed to be unreasonable, and therefore illegal, restraints of trade. *See Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Under Minnesota law, any "contract, combination, or conspiracy between two or more persons refusing to deal with another person, except a refusal to deal by associations, trading boards, or exchanges when predicated upon a failure to comply with rules of membership" is deemed to restrain trade or commerce unreasonably and is unlawful. Minn.Stat. § 325D.53, subd. 1(3). This section does not require the restraint of trade to be between competitors, and therefore, a vertical non-price restraint on trade arguably could be per se illegal under the statute. *See id.;* Note, 63 Minn.L.Rev. at 932. Under federal law, vertical non-price restraints are never illegal per se. *See Business Elecs. Corp. v. Sharp Elecs. Corp.*,

485 U.S. 717, 734–36, 108 S.Ct. 1515, 1525, 99 L.Ed.2d 808 (1988); *Sylvania,* 433 U.S. at 57–59, 97 S.Ct. at 2561–62.

■ Hough argues we should refuse to follow federal precedent and find the vertical non-price restraint between the co-op and the driver constituted a per se violation of Minnesota antitrust law. However, the co-op/driver contract is "unlike the type of agreement classified as a refusal to deal" under Minn.Stat. § 325D.53, subd. 1(3). *Watonwan,* 294 N.W.2d at 307. Although that contract effectively is a refusal to deal with Hough, it also is a refusal to deal with every other milk hauler as well. Nothing in the record indicates there was a concerted effort between the co-op and the driver to refuse to deal specifically with Hough. *See Watonwan,* 294 N.W.2d at 307 (contract not a refusal to deal because it did not refer to a specific third party). The contract also did not prevent Hough from hauling for other dairy farmers. *See id.* Finally, the contract at issue had no significant anticompetitive effect because it actually added a competitor to the milk hauling business. Under these circumstances, the co-op/driver contract is not the type of agreement which can be called a per se illegal refusal to deal.

■ Nor is there any issue of fact regarding whether the exclusive contract between the co-op and the driver unreasonably restrained trade under either federal or state antitrust law. The desire for an exclusive hauler is not an improper purpose. *See, Sylvania,* 433 U.S. at 54–55, 97 S.Ct. at 2560 (vertical restrictions promote competition by enhancing efficiency of product distribution). Further, the co-op had less market power than the other area dairies and the driver was a new hauler who had less market power than Hough. *See International Travel,* 623 F.2d at 1267 (small competitors may engage in many kinds of conduct forbidden to larger companies). Although Hough claimed his business had been harmed, he produced no evidence to show competition in the area had been damaged. Instead, by adding a milk hauler to the area, the co-op/driver contract actually enhanced competition between milk haulers. Under these circumstances, summary judgment was properly granted.

## II.

■ A cause of action for interference with prospective business relations lies when one intentionally and improperly interferes with another's prospective business relation by (1) inducing a third person not to enter into or to continue the prospective relation, or (2) preventing the other from continuing the prospective relationship. *See United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628, 632–33 (Minn.1982). However, a party's breach of its own contract is not actionable as a tort of interference with contractual relations. *See Bouten v. Richard Miller Homes, Inc.,* 321 N.W.2d 895, 901 (Minn.1982).

■ Hough argues the trial court erred in dismissing its claims for tortious interference with prospective business relations with the co-op and the driver. We disagree. First, the co-op cannot be liable in tort for interfering with a contract between itself and Hough. *See id.* The co-op was well within its contract rights in terminating its at-will relationship with Hough.

■ Second, the co-op cannot be liable in tort for interfering with the rights of the driver and Hough because their contract was terminable at-will. *See RJM Sales & Marketing, Inc. v. Banfi Prods. Corp.,* 546 F.Supp. 1368, 1378 (D.Minn. 1982). Even if Minnesota were to recognize a cause of action for tortious interference with an at-will relationship, there is no evidence the co-op improperly enticed the driver away from Hough's employment. Instead, the record shows the co-op members simply asked the driver to haul the co-op routes and the driver agreed. This job offer did not rise to the level of an improper interference with Hough's relationship with the driver. *See United Wild Rice,* 313 N.W.2d at 633 (no improper interference if the actor does not employ wrongful means and the interference does not constitute an unlawful restraint of trade). Un-

der these circumstances, the trial court properly granted summary judgment.

## DECISION

The contract between the driver and the co-op was not a per se illegal refusal to deal nor an unreasonable restraint of trade. There is no cause of action for tortious interference with a contract terminable at will. Even if there were, Hough has failed to introduce any evidence of unconscionable conduct by the co-op.

Affirmed.