**OAK PARK DEVELOPMENT CO., INC., a dissolved Minnesota corporation, on behalf of its former shareholders, and Swager Bros., Inc., Appellants,**

v.

**SNYDER BROTHERS OF MINNESOTA, INC., Respondent.**

No. C3–92–1617.

Court of Appeals of Minnesota.

April 27, 1993.

William Christopher Penwell, Sherri L. Rohlf, Siegel, Brill, Greupner & Duffy P.A., Minneapolis, for appellants.

Winthrop A. Rockwell, Scott W. Johnson, Bruce Jones, Faegre & Benson, Minneapolis, for respondent.

Considered and decided by DAVIES, P.J., and CRIPPEN and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellants, a shopping mall developer and a building contractor, brought this action alleging respondent tenant's delay in subordinating its lease to the mortgage on the property caused the developer to lose a new anchor tenant and the contractor to lose a contract for the construction of the

new addition. Appellants challenge the trial court's grant of summary judgment for respondents on claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations and tortious interference with prospective economic advantage. We affirm.

### FACTS

Appellant Oak Park Development, Inc.[1] (Oak Park) owned the St. Croix Mall in Stillwater, Minnesota. Respondent Snyder Brothers of Minnesota, Inc. (Snyder Brothers) was a tenant in the mall. Article 11 of their lease required Snyder Brothers to subordinate its lease to any mortgage on the property. Specifically, Article 11 provided:

> Landlord [Oak Park] *reserves the right to subordinate this lease at all times to the lien of any mortgage,* mortgages, trust deed or trust deeds now or hereafter placed upon the premises, *and Tenant* [Snyder Brothers] *covenants and agrees to execute and deliver, upon demand, such further instruments subordinating this lease to the lien of any such mortgage,* mortgages, trust deed or trust deeds as shall be desired by Landlord, or any proposed mortgagees or trustees under trust deeds, upon condition that at such time as any subordination hereunder is requested, Landlord shall furnish Tenant evidence that Tenant shall have the right to remain in possession of the premises under the terms of this lease.

(Emphasis added.)

Oak Park planned a mall expansion and on March 20, 1986, entered into a lease with the department store G.F. Herberger's, Inc. (Herberger's) to become an anchor tenant. As conditions precedent, Oak Park needed to secure financing and begin construction by September 20, 1986. These conditions were not met and, by the lease terms, the lease became terminable at will by either party. Nonetheless, Oak Park continued towards its goal of opening the store.

Oak Park attempted to secure financing through the financial services company Miller & Schroeder, Inc. The Herberger's store was to be financed through a bond issue secured by a first mortgage on the land and building. Timing was critical, as the Miller & Schroeder financing had to close before the bond proceeds could be received.

To secure financing, Miller & Schroeder required all mall tenants to provide a signed agreement subordinating their interest to Miller & Schroeder's mortgage. Miller & Schroeder provided a standard form subordination agreement which Oak Park forwarded to all the mall tenants on August 11, 1987. All tenants except Snyder Brothers returned signed subordination agreements within three days. On August 14, 1987, Oak Park sent Snyder Brothers a proposed Fourth Lease Rider extending the termination date of the Oak Park/Snyder Brothers lease to April 30, 1990.

When Snyder Brothers' counsel, Eugene Heck, received the subordination agreement, he discovered some of the language therein was factually incorrect and that language needed to be added to protect Snyder Brothers' rights under a previous settlement agreement.[2] Having noted these deficiencies, Snyder Brothers returned a signed subordination agreement on August 18, 1987 which reinstated Snyder Brothers' right to offset rents and also corrected other problem areas. This subordination agreement, however, was unacceptable to Miller & Schroeder. Since the rents at the mall were security for the Miller & Schroeder mortgage, Miller & Schroeder did not want to incur the risk

---

1. The principals of Oak Park Development are Norvin and Norris Swager. Appellant Swager Brothers, Inc. is a corporation owned by Norvin and Norris Swager and is the company through which they operated a construction business.

2. Snyder Brothers had previously sued Oak Park for violation of a non-compete agreement. The settlement was memorialized in a lease rider which enabled Snyder Brothers to offset rent payable to Oak Park if Oak Park defaulted on any of the payments owed under the settlement agreement.

that Snyder Brothers would exercise its right of rent offset.

On August 25, 1987, this problem was resolved by Oak Park agreeing to pay Snyder Brothers a lump sum payment to satisfy the settlement agreement. Miller and Schroeder then contacted Heck directly to make certain there were no other problems. Oak Park asserts that Heck consistently stated he would deliver a signed subordination agreement acceptable to Miller & Schroeder prior to the closing on the mortgage.

However, the Miller & Schroeder financing, originally scheduled to close on September 2, 1987, could not go forward because Snyder Brothers had not returned a subordination agreement acceptable to Miller & Schroeder. On the morning of September 3, 1987, the parties and Miller & Schroeder had a conference call and went through the subordination agreement line-by-line. Heck agreed to prepare the subordination agreement and send it to Miller & Schroeder. Oak Park states that several times during the day, Heck agreed to specific language in the subordination agreement, but each time failed to deliver a document reflecting the agreement reached.

On September 4, 1987, the process began again but Heck failed to produce an agreed upon document. The next day, another meeting was held and Heck stated he would provide a subordination agreement in accordance with everyone's agreement. Again, an acceptable document was not received. The process continued and on September 8, 1987, the interested parties met again for 12 hours. Oak Park describes the meeting as "attempting to beg, plead and cajole a subordination agreement out of Heck." Finally, on September 9, 1987, Heck produced a subordination agreement acceptable to everyone and delivered the document on September 10, 1987 after certain closing documents had been filed. Additionally, the Fourth Lease Rider was executed at this time.

As soon as Oak Park received the signed subordination agreement from Snyder Brothers on September 10, 1987, it set up a meeting with Herberger's. Oak Park believed if it could get an extension on the construction start from October 1 to October 10, 1987, it could still deliver the store on time. Herberger's, however, advised Oak Park that it had been contacted about locating at the Woodland Lakes Mall.

The Woodlands Lakes Mall was a proposed mall to be located only two miles from the St. Croix Mall. A Woodland Lakes representative approached Herberger's about locating there some time in late 1986 or early 1987, but there was no contact from the end of July until around the first week of September 1987.

On September 9, 1987, a Woodland Lakes representative sent a letter to Herberger's CEO setting forth a proposal to attract Herberger's to the new mall. On September 10, 1987, Woodland Lakes offered Herberger's $2.25 million as an incentive to locate in the new mall. Herberger's subsequently terminated its lease with Oak Park on September 16, 1987 and signed a lease with Woodland Lakes on September 29, 1987.

Appellants argue that had the financing closed as originally scheduled, Herberger's could never have considered Woodland Lakes' $2.25 million offer. Therefore, Oak Park commenced this action alleging Snyder Brothers' untimely delivery of a subordination agreement caused it to lose Herberger's as a tenant. Swager Brothers alleged Snyder Brothers' delay also caused it to lose a contract for the construction of the new addition.

Appellants raised claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations and tortious interference with prospective economic advantage. Oak Park alleged that Snyder Brothers unreasonably refused to timely subordinate its lease to the mortgage and manipulated its need for the subordination agreement to extract favorable lease concessions.

Snyder Brothers moved for summary judgment, arguing that it fulfilled its duty under the lease by delivering a revised subordination letter on August 18, 1987.

Snyder Brothers contended the fact that it supplied a document complying with the lease is fatal to all of appellants' arguments. The trial court agreed and granted summary judgment on all claims for Snyder Brothers. Judgment was entered and this appeal followed.

### ISSUES

I. Did the trial court err in granting summary judgment for Snyder Brothers on Oak Park's breach of contract and breach of the implied covenant of good faith and fair dealing claims?

II. Did the trial court err in granting summary judgment for Snyder Brothers on appellants' tortious interference with contractual relations and tortious interference with prospective economic advantage claims?

### ANALYSIS

On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. The appellate court conducts an independent review of the record in light of the relevant law to determine if the lower court made the proper legal conclusion. *Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 483 (Minn.1985).

### I. *Breach of Contract/Good Faith and Fair Dealing*

◼ The delay between August 11, 1987 and September 9, 1987 is at the heart of the dispute in this case. Oak Park states it advised Snyder Brothers that Miller & Schroeder was on a tight timetable and communicated the urgency of the financing. Oak Park contends that if Snyder Brothers had not delayed delivery of the subordination agreement, the bond financ-

ing would have closed, and the Herberger's project would have gone forward.

Under Article 11 of the Oak Park/Snyder Brother lease, Snyder Brothers was obligated to subordinate its lease to the Miller & Schroeder mortgage. Snyder Brothers, however, was not obligated to sign the boilerplate subordination form submitted by Oak Park nor give up any existing rights under the lease. Rather, Snyder Brothers only obligation under the lease was to execute a subordination agreement that in fact subordinated the lease to Miller & Schroeder's mortgage and was otherwise consistent with the other lease terms.

We hold that the subordination agreement submitted by Snyder Brothers on August 18, 1987, satisfied its obligation under the lease. The document submitted by Snyder Brothers did subordinate its lease to the mortgage. The fact the document also retained Snyder Brothers' previously bargained-for rights under the settlement agreement in no way suggests that Snyder Brothers breached the lease.

What Miller & Schroeder wanted after August 18, 1987 was not subordination but changes in the underlying lease to satisfy its own loan underwriting requirements. Snyder Brothers, however, was not obligated to change the underlying lease to contain whatever provisions Miller & Schroeder wanted. Therefore, the conduct of Snyder Brothers during the August 18–September 9 negotiations is not relevant to our decision.

Simply stated, Snyder Brothers fulfilled its obligations under the lease. Oak Park attempts to implicate the later actions of Snyder Brothers as solely causing the delay. Snyder Brothers, however, was under no obligation to further negotiate the terms of the subordination agreement or the underlying lease. Moreover, Oak Park was aware that any additional negotiations concerning the subordination document or the underlying lease would delay the realization of an agreement acceptable to Miller and Schroeder. Thus, the risk of loss due to this time delay must be borne by Oak Park.

Oak Park also argues that even if Snyder Brothers satisfied its obligation under the lease by delivering the August 18, 1987 subordination letter, its subsequent promise to provide a subordination agreement acceptable to Miller & Schroeder, renewed its obligations under the lease. This argument must fail, however, as it ignores the fact that Snyder Brothers was not obligated to negotiate changes to the underlying lease. Therefore, there were no obligations to renew.

Moreover, as it became clear that Heck was not drafting an acceptable document promptly, Oak Park could have drafted the subordination document itself. Despite the risk of delay, Oak Park chose not to draft the document relying on Heck instead. Thus Oak Park had the opportunity to minimize the delay, but chose not to do so and must now accept responsibility for that decision.

■ Oak Park next contends that Snyder Brothers did not fulfill its contractual duty of good faith and fair dealing. *See Seman v. First State Bank of Eden Prairie*, 394 N.W.2d 557, 560 (Minn.App.1986) (every party to a contract is bound by duty of good faith and fair dealing). Oak Park argues that Snyder Brothers did not act in good faith by using the urgency of the situation to extract lease concessions. This argument must also fail.

An acceptable subordination agreement could have been produced without amending the underlying lease. Thus Oak Park was not required to agree to lease concessions in order to receive an acceptable subordination document. Nonetheless, Oak Park chose to conduct negotiations concerning subordination and changes to the lease at the same time and must take responsibility for that decision.

Accordingly, we hold the trial court did not err in granting summary judgment for Snyder Brothers on Oak Park's breach of contract and breach of the implied covenant of good faith and fair dealing claims.

## II. *Tortious Interference Claims*

Appellants have set forth causes of action for tortious interference with contractual relations and tortious interference with prospective economic relations.

■ The elements of interference with contract are: (1) the existence of a contract; (2) the alleged tortfeasor's knowledge of the contract; (3) the intentional interference with the contract; (4) without justification; and (5) damages resulting from the interference. *Guerdon Indus. v. Rose*, 399 N.W.2d 186, 187 (Minn.App.1987) (citations omitted).

The Restatement of Torts sets out the elements of interference with prospective economic advantage.

> One who intentionally and improperly interferes with another's prospective contractual relation * * * is subject to liability to the other for the pecuniary harm resulting from the loss of the benefits of the relations, whether the interference consists of
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

*United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632–633 (Minn.1982) (quoting Restatement (Second) of Torts § 766B (1979)).

Oak park alleges Snyder Brothers' delay in delivering the subordination agreement tortiously interfered with its contractual relations with Herberger's by preventing Herberger's from becoming a new tenant. The trial court determined the contract between Oak Park and Herberger's had expired due to Oak Park's failure to meet construction and financing deadlines. Thus the court concluded there was no enforceable contract and accordingly, no tortious interference.

■ Although the Oak Park/Herberger's lease was terminable at will, a binding contract was still in existence, and thus any interference was actionable. *See, e.g., Michaelson v. Minnesota Mining & Mfg. Co.*, 474 N.W.2d 174, 180 (Minn.App.1991),

*aff'd,* 479 N.W.2d 58 (Minn.1992). In *Michaelson,* this court stated:

> A person may be held liable for interference with a contract, however, *even if the contract is terminable at will.*

*Id.* at 181 (citing *American Sur. Co. v. Schottenbauer,* 257 F.2d 6, 10 (8th Cir. 1958)).

 We do agree, however, with the trial court's analysis that Snyder Brothers did not intentionally interfere with the Oak Park/Herberger's contract. There is no evidence that Snyder Brothers did anything to intentionally induce Herberger's to terminate its contract with Oak Park. Rather, Herberger's simply terminated its contract with Oak Park after receiving a superior offer from Woodland Lakes. *See National Recruiters, Inc. v. Cashman,* 323 N.W.2d 736, 741 (Minn.1982) (interference must be intentional).

Many of the delays in this case resulted from Oak Park's actions or inaction. Had Oak Park not continually failed to meet construction and financing deadlines, the Herberger's store could have been built. In light of all the facts, it is not plausible to presume the Herberger's store was ..ot built due solely to Snyder Brother's delay in delivering the subordination agreement. Accordingly, any claims with regard to the Oak Park/Herberger's contract must fail.

Swager Brothers alleges it lost the construction contract to build the Herberger's store due to the untimely delivery of the subordination agreement. The trial court did not address the merits of the Oak Park/Swager Brothers contract after determining this claim was not pleaded in the original or the amended complaint. It appears, however, a tortious interference claim with regard to the Oak Park/Swager Brother contract was set forth in the Amended Complaint. The trial court, however, did not grant leave to amend the complaint to include this claim. Therefore, the claims relating to the Oak Park/Swager Brothers contract may not be considered on appeal. *See Peters v. Independent Sch. Dist. No. 657,* 477 N.W.2d 757, 760 (Minn. App.1991) ("appellate court must limit its review to only those issues actually presented to and decided by the trial court").

## DECISION

The trial court did not err in granting summary judgment for Snyder Brothers on appellants' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations and tortious interference with prospective economic advantage.

**Affirmed.**