**John GIESEKE, on behalf of DIVER-SIFIED WATER DIVERSION, INC., Respondent,**

v.

**IDCA, INC., et al., Appellants.**

**No. A12–0713.**

Court of Appeals of Minnesota.

Jan. 14, 2013.

Todd Wind, Fredrikson & Byron, P.A., Minneapolis, MN, for respondent.

Kelly Vince Griffitts, Griffitts Law Offices, PLLC, Bloomington, MN, for appellants.

Considered and decided by ROSS, Presiding Judge; SCHELLHAS, Judge; and KIRK, Judge.

## OPINION

SCHELLHAS, Judge.

Appellants challenge the district court's piercing of appellant-company's corporate veil to hold appellant-individuals liable for the jury's verdict that appellant-company converted respondent-company's property and interfered with respondent-company's prospective economic advantage. We affirm.

## FACTS

This case arises out of a protracted and complicated feud between appellant Michael Hogenson and his brother, Arthur Hogenson, (the Hogensons) and their two competing businesses—Standard Water Control Systems and respondent Diversified Water Diversion, Inc. The Hogensons jointly and equally owned Standard Water, which employed John Gieseke. Disputes arose between the Hogensons; they stopped working together in 1999; and Michael Hogenson retained ownership of Standard Water, which discharged Gieseke in part because of his friendship with Arthur Hogenson. In December 2001, Gieseke and Arthur Hogenson incorporated Diversified Water. Shortly thereafter, the companies became enmeshed in litigation. That litigation included Diversified Water suing Standard Water to enforce a non-disparagement agreement, which arose out of separate litigation, and the district court granting judgment to Diversified Water against Standard Water in the amount of $67,717.45.

In September 2007, Thomas Fallon obtained a $737,679.65 personal-injury judgment against Arthur Hogenson. Ultimately, the district court vacated the Fallon judgment on the ground that the court lacked jurisdiction because Fallon was an employee of Diversified Water when he was injured on the job. But, about two years before vacation of the Fallon judgment, a company owned by Michael Hogenson—MWH Properties—purchased the Fallon judgment for $62,500, intending to enforce it against Arthur Hogenson and give 50% of any judgment proceeds to Fallon. Michael Hogenson and his wife, appellant Debra Hogenson, also decided to purchase Arthur Hogenson's 50% stock interest in Diversified Water, and they formed appellant IDCA, Inc. for that specific purpose. Michael Hogenson testified that IDCA intended to "[s]ettle [Diversified Water's] outstanding debts, lawsuits, and so on and shut the company down." Debra Hogenson was IDCA's sole director, officer, employee, and stockholder.

After acquiring the Fallon judgment, Michael Hogenson attempted to levy the judgment against Arthur Hogenson's assets. The district court issued a writ of execution, and the Hennepin County Sheriff's Office noticed a sheriff's sale of Arthur Hogenson's stock in Diversified Water and one other company. At the sheriff's sale, IDCA purchased Arthur Hogenson's 50%

stock interest in Diversified Water. Then, without proper corporate authority, IDCA changed Diversified Water's registered address to that of Standard Water's and towed some of Diversified Water's equipment from Arthur Hogenson's home to Standard Water's building. Additionally, IDCA, based on its 50% interest in Diversified Water, settled Diversified Water's $67,717.45 judgment against Standard Water for $12,000.[1]

In September 2009, on behalf of Diversified Water and based on his 50% ownership interest, Gieseke sued numerous parties, including IDCA, Michael Hogenson, and Debra Hogenson, alleging breach of fiduciary duty, conversion, replevin, interference with prospective economic advantage, and alter-ego liability. In their answer and counterclaim, Michael Hogenson, and Debra Hogenson alleged that Gieseke's claims "may be barred by the doctrine[ ] of unclean hands," that IDCA is "a bonafide purchaser for value of the shares of Diversified," and that IDCA "has good title to the shares of Diversified" because IDCA had no knowledge based on the face of the Fallon judgment that it was void for lack of subject-matter jurisdiction.

The district court denied summary judgment to IDCA, Michael Hogenson, and Debra Hogenson, rejecting their argument that IDCA was a bona fide purchaser of the Fallon judgment because it was void for lack of subject-matter jurisdiction. The district court also rejected the argument of unclean hands. The case proceeded to trial, and a jury answered special-verdict questions in part as an advisory jury under Minn. R. Civ. P. 39.02. The jury advised the district court that: IDCA breached a fiduciary duty to Diversified Water; the breach caused damages of $41,000; and IDCA's corporate veil should

be pierced. And the jury returned verdicts that: IDCA converted Diversified Water's property and Diversified Water is entitled to damages of $10,000; IDCA is liable for replevin and Diversified Water is entitled to damages of $10,000; and IDCA committed tortious interference with Diversified Water's prospective economic advantage and Diversified Water is entitled to damages of $220,000.

Based on the advice of the advisory jury, the district court pierced IDCA's corporate veil but, because IDCA was not a fiduciary to and did not owe a fiduciary duty to Diversified Water, the court rejected the jury's advice that IDCA breached a fiduciary duty to Diversified Water. The district court awarded damages of $10,000 for the conversion and replevin claims, reasoning that the damages for each were duplicative. The district court also awarded $220,000 for tortious interference with prospective economic advantage. The total damages award was $230,000.

IDCA, Michael Hogenson, and Debra Hogenson moved for amended findings, a new trial, and judgment as a matter of law (JMOL), and the district court denied their motions.

This appeal follows.

## ISSUES

I. Is tortious interference with prospective advantage a valid tort claim under Minnesota law?

II. Does the evidence sustain the jury's verdict that IDCA committed tortious interference with Diversified Water's prospective advantage?

III. Did the unclean-hands doctrine preclude the district court from piercing IDCA's corporate veil?

---

1. Debra Hogenson signed the settlement agreement as Vice President of Diversified Water even though she had not been duly elected vice president.

**IV.** Does the evidence sustain the district court's piercing of IDCA's corporate veil to hold Michael Hogenson and Debra Hogenson liable for IDCA's conduct?

**V.** Is the jury's damages award excessive?

## ANALYSIS

Appellate courts will reverse a district court's denial of a new-trial motion only if the district court clearly abused its discretion, *Frazier v. Burlington N. Santa Fe Corp.,* 811 N.W.2d 618, 629 (Minn.2012), but appellate courts "need not give deference to the district court's décision" on issues of law, *Stoebe v. Merastar Ins. Co.,* 554 N.W.2d 733, 735 (Minn.1996). Appellate courts review de novo a district court's denial of a JMOL motion, *Glorvigen v. Cirrus Design Corp.,* 816 N.W.2d 572, 581 (Minn.2012), and in doing so, "apply the same standard the district court uses," "constru[ing] the evidence in the light most favorable to the prevailing party" to determine whether " 'there is [a] legally sufficient evidentiary basis for a reasonable jury to find' " for the party denied JMOL. *Kidwell v. Sybaritic, Inc.,* 784 N.W.2d 220, 229 (Minn.2010) (quoting Minn. R. Civ. P. 50.01(a)). JMOL is appropriate when "the evidence is practically conclusive against the verdict and reasonable minds can reach only one conclusion or the jury's findings are contrary to the law applicable in the case." *Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 887 (Minn.2010)(quotation omitted). JMOL is "inappropriate if jurors could differ on the conclusions to be drawn from the record." *Daly v. McFarland,* 812 N.W.2d 113, 119 (Minn.2012) (quotation omitted).

■ A jury's "answer to a special verdict question should be set aside only if it is perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Moorhead Econ.,* 789 N.W.2d at 888 (quotation omitted). But an advisory jury's answers to special-verdict questions "only ... advise the court" and an advisory jury's findings do not "supplant" a district court's findings but "merely reinforce the court's own decision on the disputed fact." *Onvoy, Inc. v. ALLETE, Inc.,* 736 N.W.2d 611, 616 (Minn.2007)(quotation omitted); *see In re Estate of Balafas,* 293 Minn. 94, 94, 198 N.W.2d 260, 260 (1972) ("[F]indings made by a court sitting without a jury, or with an advisory jury, shall not be set aside unless clearly erroneous."); *Noble v. C.E.D.O., Inc.,* 374 N.W.2d 734, 739 (Minn. App.1985) ("When the court empanels an advisory jury, it must make its own findings of fact."); *cf.* Minn. R. Civ. P. 39.02 ("In all actions not triable of right by a jury, the court, upon motion or upon its own initiative, may try an issue with an advisory jury....").

## I. Is tortious interference with prospective advantage a valid tort claim under Minnesota law?

■ A district court may grant a new-trial motion when the "verdict ... is contrary to law," Minn. R. Civ. P. 59.01(g), and may grant a JMOL motion when "the jury's findings are contrary to the law applicable in the case," *Moorhead Econ.,* 789 N.W.2d at 887 (quotation omitted). IDCA, Michael Hogenson, and Debra Hogenson argue that tortious interference with prospective economic advantage is "not ... recognized in Minnesota." Gieseke counters that the supreme court has "strongly indicated that a claim for tortious interference with prospective advantage *is* recognized in Minnesota." We agree with Gieseke.

In *Wild v. Rarig,* the supreme court noted that "[w]rongful interference with contract and wrongful interference with business relationships, also known as interference with contractual relations and interference with prospective advantage, are actionable tort claims in Minnesota." 302 Minn. 419, 442 & n. 16, 234 N.W.2d 775, 790 & n. 16 (1975) (citation omitted). In doing so, the supreme court relied in part on its opinion in *Witte Transp. Co. v. Murphy Motor Freight Lines, Inc.,* in which the court stated: "This court has long recognized that there lies an action for the wrongful interference with *noncontractual* as well as contractual business relationships." 291 Minn. 461, 465, 193 N.W.2d 148, 151 (1971) (emphasis added). After the supreme court decided *Wild,* this court repeatedly addressed the subject tort, never questioning whether Minnesota recognized it. *See Wallin v. Minn. Dep't of Corr.,* 598 N.W.2d 393, 401 (Minn.App.1999)(regarding subject tort's statute of limitations), *review denied* (Minn. Oct. 21, 1999); *Oak Park Dev. Co. v. Snyder Bros. of Minn., Inc.,* 499 N.W.2d 500, 505–06 (Minn.App.1993) (concluding district court did not erroneously grant summary judgment to respondent on appellant's claim under subject tort); *Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co.,* 530 N.W.2d 867, 871 (Minn.App.1995)(noting requirements for cause of action based on subject tort), *review denied* (Minn. June 29, 1995); *Hough Transit, Ltd. v. Nat'l Farmers Org.,* 472 N.W.2d 358, 361 (Minn.App.1991) (same); *Hunt v. Univ. of Minn.,* 465 N.W.2d 88, 95 (Minn.App.1991) (same); *Midway Manor Convalescent & Nursing Home, Inc. v. Adcock,* 386 N.W.2d 782, 788 (Minn.App.1986) (relying on *Witte,* noting basis for subject tort).

But in *Harbor Broad., Inc. v. Boundary Waters Broadcasters, Inc.,* referring to the subject tort as "tortious interference with business expectancy," this court questioned whether Minnesota recognizes the subject tort, stating that we "decline[d] to decide whether a claim for tortious interference with business expectancy is a valid tort claim under Minnesota law." 636 N.W.2d 560, 569 n. 4 (Minn.App.2001). The variety of names for the subject tort found in caselaw and the supreme court's opinion in *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628 (Minn.1982), appear to have precipitated the *Harbor Broad.* court's doubt.

In *Harbor Broad.,* citing *United Wild Rice,* 313 N.W.2d at 632–33, the appellants argued that Minnesota recognizes "tortious interference with business expectancy." 636 N.W.2d at 569 n. 4. Without mentioning *Wild* or *Witte, id.* at 560–70, this court disagreed, implying that, in *United Wild Rice,* the supreme court recognized a *new* tort, that being "only ... the tort of intentional interference with prospective contractual relations." *Id.* at 569 n. 4 (citing *United Wild Rice,* 313 N.W.2d at 632–33); *see also R.A., Inc. v. Anheuser–Busch, Inc.,* 556 N.W.2d 567, 570 (Minn.App.1996)(concluding that supreme court in *United Wild Rice* "recognized a tort claim for interference with prospective contracts"), *review denied* (Minn. Jan. 29, 1997).

But our reading of *United Wild Rice* informs us that, in *United Wild Rice,* the supreme court did not recognize a new tort but rather referred to the subject tort by two new names—"wrongful interference with ... prospective contractual relations" and "intentional interference with prospective contractual relations." 313 N.W.2d at 632. Citing to *Wild* and *Witte,* the *United Wild Rice* court expressly stated, "This state *has recognized* a cause of action for wrongful interference with both present and *prospective* contractual relations." 313 N.W.2d at 632 (emphasis added). And

the *United Wild Rice* court described the elements for "intentional interference with prospective contractual relations" from the Restatement (Second) on Torts § 766B (1979). *Id.* at 632–33. Section 766B broadly defines intentional interference with prospective contractual relations in a way that fully encompasses the subject tort:

The relations protected against intentional interference by the rule stated in this Section include *any prospective contractual relations,* except those leading to contracts to marry ..., if the potential contract would be of pecuniary value to the plaintiff. Included are interferences with the prospect of obtaining employment or employees, the opportunity of selling or buying land or chattels or services, and *any other relations leading to potentially profitable contracts.* Interference with the exercise by a third party of an option to renew or extend a contract with the plaintiff is also included. *Also included is interference with a continuing business or other customary relationship not amounting to a formal contract....*

The expression, prospective contractual relation, is not used in this Section in a strict, technical sense. *It is not necessary that the prospective relation be expected to be reduced to a formal, binding contract.* It may include prospective quasi-contractual or other restitutionary rights or even the voluntary conferring of commercial benefits in recognition of a moral obligation.

Restatement (Second) of Torts § 766B cmt. c (emphasis added). Section 766B further notes that English common-law decisions from which the tort developed "extended the same principle to interference with *business relations* that are merely prospective and potential" and that under the tort "liability was imposed for interfer-

ence with *business expectancies* and was not limited to interference with existing contracts." Restatement (Second) of Torts § 766B cmt. b (emphasis added).

Quoting *United Wild Rice,* this court recently concluded in *Moore v. Hoff* that "[t]he tort of intentional interference with prospective advantage is 'intentionally and improperly interfer[ing] with another's prospective contractual relation.'" 821 N.W.2d 591, 596 (Minn.App.2012) (quoting *United Wild Rice,* 313 N.W.2d at 633); *see Hough Transit,* 472 N.W.2d at 361 (defining the subject tort—named "interference with prospective business relations"—with the definition provided by *United Wild Rice*); *Glass Serv.,* 530 N.W.2d at 871 (same); *Hunt,* 465 N.W.2d at 95 (same); *see also Eller v. Nat'l Football League Players Ass'n,* 872 F.Supp.2d 823, 829–30, (D.Minn.2012) (reviewing *Wild, Witte, United Wild Rice,* and *Harbor Broad.,* and concluding that *Wild* and *Witte* stand for the proposition that "Minnesota recognizes a claim for wrongful interference with non-contractual business relationships, that is, a claim of interference with prospective advantage").

In light of the supreme court's opinions in *Wild, Witte,* and *United Wild Rice,* we hold that Minnesota recognizes tortious interference with prospective advantage, also referred to as tortious interference with prospective economic advantage, tortious interference with business expectancy, wrongful interference with business relations or relationships, tortious interference with prospective contractual relations or relationships, and wrongful interference with prospective contractual relations or relationships, as a valid tort claim. We therefore conclude that IDCA, Michael Hogenson, and Debra Hogenson are not entitled to a new trial or JMOL based on their ar-

gument that Minnesota does not recognize the tort action of tortious interference with prospective economic advantage.

## II. Does the evidence sustain the jury's verdict that IDCA committed tortious interference with Diversified Water's prospective advantage?

Appellate courts afford district courts "the broadest possible discretionary power" when a district court denies a new-trial motion submitted on the ground that the evidence does not justify the verdict. *Clifford v. Geritom Med, Inc.,* 681 N.W.2d 680, 686–87 (Minn.2004) (quotation omitted); *see* Minn. R. Civ. P. 59.01(g) (permitting new trial if "[t]he verdict . . . is not justified by the evidence"). Appellate courts review de novo a district court's denial of a JMOL motion, "constru[ing] the evidence in the light most favorable to the prevailing party," *Kidwell,* 784 N.W.2d at 229, to determine whether "the evidence is practically conclusive against the verdict and reasonable minds can reach only one conclusion or the jury's findings are contrary to the law applicable in the case," *Moorhead Econ.,* 789 N.W.2d at 887 (quotation omitted).

### A. Elements of Tortious Interference with Prospective Advantage

■ The elements of tortious interference with prospective advantage are (1) "intentionally and improperly interfer[ing] with another's prospective contractual relation" (2) by either "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." *United Wild Rice,* 313 N.W.2d at 633 (quotation omitted); *accord Moore,* 821 N.W.2d at 596; 4 *Minnesota Practice* CIVJIG 40.35 (2006) ("Interference .with prospec-

tive advantage means intentionally and improperly interfering with another person's prospective contractual relationship by: . . . 1. Inducing or causing a third person not to enter or continue in the relationship, or 2. Preventing the other person from getting or continuing the relationship."). Tortious interference with prospective advantage "protects an interest in the reasonable expectation of economic advantage." *Wild,* 302 Minn. at 442 n. 16, 234 N.W.2d at 790 n. 16.

### B. Evidence
#### 1. Improper Conduct

■ IDCA, Michael Hogenson, and Debra Hogenson argue that IDCA's conduct was not improper because IDCA was merely exercising "creditor remedies with respect to the Fallon Judgment." Gieseke counters that IDCA's conduct was improper because—after IDCA engaged in that conduct—a district court concluded that the Fallon judgment was void for lacking subject-matter jurisdiction. Gieseke's argument is persuasive.

■ Factors relevant to determining whether an actor's conduct is improper for the purposes of tortious interference with prospective economic advantage include:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference, and

(g) the relations between the parties.

*R.A.*, 556 N.W.2d at 571 (quoting Restatement (Second) of Torts § 767 (1979) (quotation marks omitted)). Liability under the subject tort "could be based on the intentional doing of a wrongful act without legal justification or excuse," and does not require that the violation be a "wilful violation of a known right" or involve "malice in the sense of ill-will or spite." *Witte*, 291 Minn. at 465, 193 N.W.2d at 151 (quotation omitted).

 IDCA's improper conduct is described above in the facts section, and we will not repeat it here. Although IDCA, Michael Hogenson, and Debra Hogenson argue that the evidence is insufficient to sustain the verdict, they do not challenge the jury's verdict that IDCA "converted [Diversified Water's] property from ... Art Hogenson's private residence" and "wrongfully retained [Diversified Water's] property." And the Fallon judgment upon which Michael Hogenson commenced the judgment-enforcement proceedings that led to the January 2009 sheriff's sale of Arthur Hogenson's Diversified Water stock is void. In September 2010, a district court vacated the Fallon judgment because the district court "lack[ed] subject matter jurisdiction," concluding that the plaintiffs in that matter "shall be allowed to pursue their remedy under the Workers' Compensation Act." [2] "[A] judgment entered by a court without subject matter jurisdiction is void *ab initio*." *Kulinski v. Medtronic Bio–Medicus, Inc.*, 577 N.W.2d 499, 502 (Minn.1998); *see Black's Law Dictionary* 5 (9th ed.2009) (defining "ab initio" as meaning "[f]rom the beginning").

A void judgment is in legal effect no judgment. No rights can be divested or obtained under it. Neither binding nor barring anyone, all acts performed under it and all claims based on it are void. One who attempts to enforce such a judgment is not protected by it. A party who causes a levy to be made under an execution issued upon a void judgment acts without justification and is liable as a trespasser for having caused a wrongful levy.

*Beede v. Nides Fin. Corp.*, 209 Minn. 354, 355–56, 296 N.W. 413, 414 (1941); *see Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn.App.1995) ("A void judgment is legally ineffective....").

Based on our careful review of the record evidence, we conclude that the jury reasonably could have found that IDCA's conduct was improper. *Cf. Hanson v. Woolston*, 701 N.W.2d 257, 260, 267 (Minn. App.2005) ("A person who obtains an interest in property through the assignment of a void judgment may not acquire title as a third-party bona fide purchaser.... [I]f the Weber judgment is void on the face of the record for lack of jurisdiction, Woolston obtained no rights as a bona fide purchaser of the judgment."), *review denied* (Minn. Oct. 18, 2005).

### 2. Reasonable Expectation

 IDCA, Michael Hogenson, and Debra Hogenson argue that Diversified Water did not have a reasonable expectation of prospective economic advantage because Diversified Water "was bleeding money and required capitalization from Art Hogenson to survive"; "[w]hen Art Hogenson quit making capital contributions, Diversified quit operating"; and Art Hogenson and Jack Gieseke testified that

---

**2.** *See* Minn.Stat. § 176.031 (2012)(providing that "liability of an employer prescribed by this chapter is exclusive"); *Stengel v. E. Side Beverage*, 690 N.W.2d 380, 383 (Minn.App. 2004) ("When the [workers' compensation act] provides the employee's exclusive remedy, district courts are without subject-matter jurisdiction, unless an employee facing an exclusivity defense can show that the alleged conduct falls within an exception to the coverage of the Act."), *review denied* (Minn. Feb. 23, 2005).

on January 16, 2009—two weeks before the January 30, 2009 sheriff's sale—Diversified Water was "no longer operating." Their argument is not persuasive.

Although Diversified Water's tax returns reveal consistent and increasing financial losses from 2004 through 2006, with a 2004 loss of $34,090; a 2005 loss of $67,463; and a 2006 loss of $81,673, the record also contains evidence on which the jury reasonably could have found that Diversified Water had a reasonable expectation of prospective economic advantage with which IDCA interfered. Although Diversified Water endured financial losses from 2004 through 2006, for 2004 its revenue was $401,033 and officer compensation was $82,000; for 2005 its revenue was $361,725 and officer compensation was $85,500; and for 2006 its revenue was $455,000 and officer compensation was $45,984. Gieseke testified that Diversified Water's success rate at getting business between 2002 and 2006 was "pretty good," with Diversified Water fairly consistently obtaining "[a]round 100 [jobs] a year." Gieseke testified that Diversified Water's revenue in 2007 was between $300,000 and $400,000 and that Diversified Water earned a profit in 2008. Moreover, an expert accounting witness testified that "it is possible . . . that companies lose money even on a year over year basis for multiple years and still have a value."

JMOL is "inappropriate if jurors could differ on the conclusions to be drawn from the record," *Daly*, 812 N.W.2d at 119 (quotation omitted), and new trials are only appropriate when the verdict is not justified by the evidence in light of the district court's broad discretion, *Clifford*, 681 N.W.2d at 686–87. We conclude that the district court did not err by denying IDCA, Michael Hogenson, and Debra Hogenson's motions for JMOL or a new trial because, based on the record evidence, the

jury could reasonably have found that Diversified Water had a reasonable expectation of economic advantage before IDCA interfered with that prospective advantage.

## III. Did the unclean-hands doctrine preclude the district court from piercing IDCA's corporate veil?

 IDCA, Michael Hogenson, and Debra Hogenson argue that, under the unclean-hands doctrine, the district court erred by permitting Diversified Water to pierce IDCA's corporate veil. "The doctrine of unclean hands bars a party who acted inequitably from obtaining equitable relief." *Heidbreder v. Carton*, 645 N.W.2d 355, 371 (Minn.2002) (quotation omitted); *see Gully v. Gully*, 599 N.W.2d 814, 825 (Minn.1999) ("[A] party may be denied relief where [the party's] conduct has been unconscionable by reason of a bad motive, or where the result induced by [the party's] conduct will be unconscionable either in the benefit to [the party] or the injury to others." (quotation omitted)). The unclean-hands doctrine is an "equitable consideration[ ]," *United Prairie Bank–Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 61 (Minn. 2012), and appellate courts "review equitable determinations for abuse of discretion," *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 23 (Minn.2011).

IDCA, Michael Hogenson, and Debra Hogenson base their unclean-hands argument on IDCA's allegation that Gieseke and Arthur Hogenson "caused a letter to be submitted to" Fallon's attorney and "caused a response to be filed with Berkley Risk Administration Company," "indicating that Fallon was not an employee of Diversified" and therefore resulting in Berkley Risk "den[ying] Fallon's Worker's Compensation Claim." Based on that allegation, they argue that Gieseke, Arthur Hogenson, and Diversified Water "made

false statements" to various individuals in connection with the Fallon judgment to avoid "a rate increase for its worker's compensation insurance." The district court rejected their argument, concluding that the allegedly false statements were "too remote" and "part of a distinct matter separate" from the factual basis for this case, therefore not warranting application of the unclean-hands doctrine. On appeal, Gieseke argues that the unclean-hands doctrine is unavailable to IDCA, Michael Hogenson, and Debra Hogenson because the false statements were "entirely collateral to the issue of whether IDCA is an alter ego of Deb and Mike Hogenson."

▬ The record reflects that the facts underlying the Fallon dispute are collateral to the present dispute, and therefore the district court did not abuse its discretion by rejecting the unclean-hands argument of IDCA, Michael Hogenson, and Debra Hogenson. The factual basis for the Fallon dispute was a personal-injury workers' compensation dispute involving Diversified Water, Arthur Hogenson, and Fallon. The factual basis for the present dispute is an attempt by IDCA, Michael Hogenson, and Debra Hogenson to shut down Diversified Water. We conclude that the unclean-hands doctrine did not preclude the district court from piercing IDCA's corporate veil because "unclean hands in a collateral matter is not a defense to equitable relief." *Berg v. Carlstrom*, 347 N.W.2d 809, 812 (Minn.1984).

## IV. Does the evidence sustain the district court's piercing of IDCA's corporate veil to hold Michael Hogenson and Debra Hogenson liable for IDCA's conduct?

### A. Standard of Review

IDCA, Michael Hogenson, and Debra Hogenson argue that the district court abused its discretion by piercing IDCA's corporate veil to hold Michael Hogenson and Debra Hogenson liable for IDCA's conduct.

▬ "Piercing the corporate veil is an equitable remedy that may be applied in order to avoid an injustice." *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. App.2009) (citing *Roepke v. W. Nat'l Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn.1981)). We review a district court's exercise of its equitable powers for an abuse of discretion. *Equity Trust Co.*, 766 N.W.2d at 339; *see also Sarpal*, 797 N.W.2d at 23.

### B. Evidence Necessary to Pierce Corporate Veil

▬ "A court may pierce the corporate veil to hold a shareholder liable for the debts of the corporation" when "the shareholder is the alter ego of the corporation," *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn.2007), and "piercing the corporate veil is necessary to avoid injustice or fundamental unfairness," *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997). Notably, Debra Hogenson is IDCA's sole director, officer, employee, and shareholder. Michael Hogenson has none of those roles with IDCA. But "a district court may pierce the corporate veil to impose personal liability against *any party* who disregards the corporate form, regardless of whether the party holds an ownership interest in the entity" because "veil piercing is grounded in equity and intended to prevent abuse of corporate protections." *Equity Trust Co.*, 766 N.W.2d at 339–40 (emphasis added) ("If veil piercing were solely dependent on a party's ownership interest in an entity, unscrupulous parties could avoid personal liability under the doctrine by simply acting in a capacity that does not involve ownership.").

### 1. Whether IDCA is the Alter Ego of Michael Hogenson and Debra Hogenson

In *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979), the supreme court "approved the 'alter ego' or 'instrumentality' theory for imposing liability on an individual shareholder." *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn.1982). Courts apply a two-prong test "to determine when the corporate entity should be disregarded." *Id.* at 608. "The first prong of the test focuses on the shareholder's relationship to the corporation." *Id.* Eight factors are significant in making the determination:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

*Id.* "Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness." *Id.* at 608 n. 1. "When using the alter ego theory to pierce the corporate veil, courts look to the reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." *Hoyt Props.*, 736 N.W.2d at 318 (quotation omitted).

Here, the record supports the assertions of IDCA, Michael Hogenson, and Debra Hogenson that IDCA had a separate bank account; capitalization including a $5,000 loan used to purchase Arthur Hogenson's Diversified Water stock; and documentation in observation of corporate formalities, including a certificate of incorporation, articles of incorporation, bylaws, a tax identification number, and tax returns. And the record does not indicate that IDCA was insolvent or that Debra Hogenson—the only IDCA shareholder—was siphoning funds.

But the record supports Gieseke's argument that, although Debra Hogenson was the sole director, officer, employee, and stockholder of IDCA, she was a nonfunctioning officer, who knew almost nothing about IDCA. Her deposition testimony offered at trial revealed that she was not sure when IDCA was formed, she did not know the number of outstanding shares, she was not certain of the price paid for her shares or her total capital contribution. Her deposition testimony also reveals that she did not know: the equipment or vehicles owned by IDCA or who would know the information; the name of IDCA's accountant; who paid IDCA's legal fees in this matter; what other business IDCA was pursuing; how much capital was necessary to run a water company; whether there had been any other source of revenue, income, or financing for IDCA since the time it was formed; whether IDCA had ever obtained a loan; who made IDCA's bank deposits; how IDCA obtained $72,000 in March 2009; why IDCA withdrew $81,000 from its account in April 2009; or how IDCA obtained $32,000 in November 2010.

Based on our careful review of the record, we conclude that the record supports Gieseke's argument that "IDCA was a façade for the individual dealings of Michael Hogenson and Deb Hogenson." We therefore conclude that the district court did not abuse its discretion by concluding that the veil-piercing factors favored piercing IDCA's corporate veil to hold Debra and Michael Hogenson personally liable.

### 2. Whether Piercing the Corporate Veil was Necessary to Avoid Injustice or Fundamental Unfairness

 "The second prong of the test examines the relationship of the plaintiff to the corporation. . . . [P]roof of strict common law fraud is not required, but, rather, evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented." *White,* 322 N.W.2d at 608 (quotation omitted). IDCA, Michael Hogenson, and Debra Hogenson have waived any challenge regarding the second prong because they presented no arguments in their brief, focusing all of their arguments on the first prong's factors. *See Balder v. Haley,* 399 N.W.2d 77, 80 (Minn.1987) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." (quotation omitted)). Moreover, the district court could reasonably have concluded that Michael Hogenson and Debra Hogenson's involvement in IDCA's conversion and tortious interference with Diversified Water's prospective economic advantage showed that they were operating IDCA in an unjust manner.

We conclude that the district court did not abuse its discretion by piercing IDCA's corporate veil to hold Michael Hogenson and Debra Hogenson liable for IDCA's conduct.

### V. Is the jury's damages award excessive?

A district court may grant a new-trial motion due to "[e]xcessive . . . damages, appearing to have been given under the influence of passion or prejudice." Minn. R. Civ. P. 59.01(e); *see Flanagan v. Lindberg,* 404 N.W.2d 799, 800 (Minn.1987) (noting that, to satisfy rule 59.01(e), dam-ages must be "so . . . excessive" that they could "only have been rendered on account of passion or prejudice" (quotations omitted)). An appellate court will uphold a district court's "denial of a new trial motion based on excessive damages . . . unless there has been a clear abuse of discretion." *Johnson v. Washington Cnty.,* 518 N.W.2d 594, 601 (Minn.1994). Appellate courts "[g]enerally . . . will not disturb a damage award unless the failure to do so would be shocking or would result in plain injustice." *Dunn v. Nat'l Beverage Corp.,* 745 N.W.2d 549, 555 (Minn.2008) (quotation omitted); *see Lewis v. Equitable Life Assurance Soc'y of the U.S.,* 389 N.W.2d 876, 891 (Minn.1986)("A jury award will not be set aside unless it is manifestly and palpably contrary to the evidence."); *Verhel v. Indep. Sch. Dist. No. 709,* 359 N.W.2d 579, 591 (Minn.1984)("The test for setting aside a verdict as excessive is whether it shocks the conscience.").

#### A. Breach–of–Fiduciary–Duty Damages

IDCA, Michael Hogenson, and Debra Hogenson argue that the jury's *advisory* finding that IDCA breached a fiduciary duty to Diversified Water, which the district court did not adopt, was "impossible without the jury feeling passionate and prejudicial" against IDCA, Michael Hogenson, and Debra Hogenson because "Gieseke testified that he did not trust" them. We disagree. Gieseke testified that he did not trust IDCA, Michael Hogenson, and Debra Hogenson to act in Diversified Water's best interests. But the record is otherwise devoid of evidence to support the argument that the jury's advisory finding was the result of passion and prejudice.

#### B. Disparity in Damage Awards

 IDCA, Michael Hogenson, and Debra Hogenson argue that the jury's pas-

sion or prejudice is evidenced by the disparity between the jury's awards of $10,000 for conversion and replevin; $41,000 for breach of fiduciary duty; and $220,000 for tortious interference with prospective economic advantage. They seem to argue that the common "basis for damages for each cause of action ... was [their] seizure" of Diversified Water's property. Their argument is unpersuasive.

The jury, in awarding different damages amounts, was remedying different wrongs. The district court's conversion and replevin jury instructions required the jury to remedy IDCA's damage to Diversified Water's property seized by IDCA. The court's breach-of-fiduciary-duty jury instruction required the jury to remedy IDCA's breach of "the highest standard of duty implied by law." And the court's tortious-interference-with-prospective-economic-advantage jury instruction required the jury to remedy IDCA's interference with Diversified Water's "reasonable *expectation* of economic advantage," which Gieseke's counsel argued during closing argument extended from 2009 through 2011. (Emphasis added.) And during that closing argument, Gieseke's counsel—based on Gieseke's testimony and Diversified Water's 2004, 2005, and 2006 tax returns—provided to the jury a means to calculate Diversified Water's tortious-interference damages for 2009, 2010, and 2011, totaling $235,350—$15,350 more than the $220,000 tortious-interference damages that the jury awarded.

### C. JMOL for Damages

IDCA, Michael Hogenson, and Debra Hogenson argue that they are entitled to JMOL regarding the jury's $220,000 tortious-interference damages award because the record evidence "supports only a finding that Diversified lost money in each of the years of its existence" and "would lead a reasonable juror to believe that Diversified was not damaged." We disagree. JMOL is "inappropriate if jurors could differ on the conclusions to be drawn from the record." *Daly*, 812 N.W.2d at 119 (quotation omitted). Here, as we concluded above, the jury could reasonably have found that Diversified Water had a reasonable expectation of prospective economic advantage. Notably, the accounting expert testified that "it is possible ... that companies lose money even on a year over year basis for multiple years and still have a value."

We conclude that the district court did not err by denying the JMOL motion of IDCA, Michael Hogenson, and Debra Hogenson because the evidence is not practically conclusive against the jury's $220,000 tortious-interference damages award. We further conclude that the district court did not abuse its discretion by denying IDCA, Michael Hogenson, and Debra Hogenson's new-trial motion because the jury's $230,000 total damages award is not excessive because it is not shocking and does not result in plain injustice. *See Verhel*, 359 N.W.2d at 592 ("[T]he assessment of damages is the peculiar province of the jury." (quotation omitted)); *see also Myers v. Hearth Techs., Inc.*, 621 N.W.2d 787, 794 (Minn.App.2001) (noting that, even though damages were "large compared to the severity of a plaintiff's injuries, the assessment of damages is the peculiar province of the jury" (quotation omitted)).

### DECISION

A claim of tortious interference with prospective advantage is a valid tort claim under Minnesota law. The evidence sustains the jury's verdict that IDCA committed tortious interference with Diversified Water's prospective economic advantage.

The unclean-hands doctrine did not preclude the district court from piercing IDCA's corporate veil, and the district court did not abuse its discretion by piercing IDCA's corporate veil to hold Michael Hogenson and Debra Hogenson liable for IDCA's conduct. The jury's monetary verdict is not excessive and does not warrant a new trial.

**Affirmed.**